# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MIMO RESEARCH, LLC,<br>*Plaintiff*<br><br>-vs-<br><br>NXP SEMICONDUCTORS N.V., NXP B.V., and NXP USA, INC.,<br>*Defendants* | § § § § § § § § § § | W-22-CV-00501-ADA |

**ORDER GRANTING NXP B.V. AND NXP SEMICONDUCTORS N.V.'s MOTION TO DISMISS UNDER FEDERAL RULES 12(B)(2) AND 12(B)(6)**

Before the Court is Defendants NXP B.V. ("BV") and NXP Semiconductors N.V.'s ("NV") Motion to Dismiss Under Federal Rules 12(B)(2) and 12(B)(6) (the "Motion") filed on September 26, 2022. ECF No. 21. After jurisdictional discovery, on February 10, 2023, Plaintiff MIMO Research, LLC ("MIMO") filed its Response. ECF No. 45. On February 21, 2023, Defendants filed a Reply in support of their Motion. ECF No. 51. After a thorough review of all the briefs, relevant facts, and applicable law, the Court **GRANTS** Defendants BV and NV's Motion to Dismiss Under Federal Rule 12(B)(2). Because the Court grants under Rule 12(B)(2), it does not need to consider whether dismissal of these Defendants would be appropriate under Rule 12(B)(6).

I. BACKGROUND

Plaintiff MIMO filed this lawsuit, alleging Defendants BV, NV, and NXP USA, Inc. ("NXP USA") infringed and continue to infringe the following patents owned by MIMO: U.S. Patent Nos. 7,091,854 ("'854 patent"), 7,200,166 ("'166 patent"), 7,350,057 ("'057 patent"), and 7,433,382 ("'382 patent") (collectively, the "asserted patents"). ECF No. 21 at 2 n.2. MIMO

1

alleges that some of NXP USA's products, including 88W8897, 88W8997, IW620, 88W9098, 88W9064, 88W9064S, 88W8964, 88W9098, 88Q9098, 88Q9098S, 88W8897P, LPC MCU Series Microcontrollers, Trimension SR150, Trimension SR040, Trimension SR100T, and Trimension OL23D0 (collectively, the "accused products"), infringe the asserted patents. *Id.* at n.3.

MIMO's Complaint alleges that NXP USA is a Delaware corporation with its principal place of business in Texas. ECF No. 1 ¶ 3. Defendants NV and BV are Dutch companies with their principal places of business in The Netherlands. *Id.* ¶¶ 4−5. NXP USA is a subsidiary of BV. ECF No. 21 at 3. BV is the wholly-owned subsidiary of NV. *Id.*

## II.  LEGAL STANDARD

### A. Personal Jurisdiction

Federal Circuit law governs personal jurisdiction where "a patent question exists." *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). In the present case, general jurisdiction is not at issue. Therefore, this Court will proceed with its evaluation regarding specific jurisdiction. "[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Id.* "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (citations omitted).

To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The Federal Circuit applies a three prong test to determine if specific jurisdiction exists:

(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Upon a showing of minimum contacts, the defendant bears the burden to prove unreasonableness. *Id.*

The stream-of-commerce doctrine "recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby [] subject itself to personal jurisdiction—by sending its goods rather than its agents into the forum." *In re Depuy Orthopaedics, Inc.*, 888 F.3d 753, 753 (Fed. Cir. 2018). The existence of an "established distribution channel into the forum" is a "significant factor" when evaluating the strength of a non-movant's stream-of-commerce theory. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 n.15 (Fed. Cir. 1994). The Supreme Court has, however, introduced a split of authority as to what is required to establish minimum contacts under a stream-of-commerce theory. In *Asahi Metal Indus. Co. v. Superior Court*, two four-justice pluralities offered slightly different versions of this theory. 480 U.S. 102 (1987). Justice Brennan, supported by three other justices, argued jurisdiction could be validly exercised over a defendant who placed goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state. *See Beverly Hills Fan*, 21 F.3d at 1566 (citing *Asahi*, 480 U.S. at 117). Justice O'Connor, also supported by three other justices, opined that there must be "more than the mere act of placing a product in the stream of commerce" and endorsed the additional requirement of "an action of the defendant purposefully directed toward the forum State." *Id.* (quoting *Asahi*, 480 U.S. at 112 (emphasis removed)).

3

The Federal Circuit has repeatedly refused to endorse either articulation of the stream-of-commerce theory. *See, e.g.*, *Beverly Hills Fan*, 21 F.3d at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364. The Federal Circuit has explained that defendants fall under the stream-of-commerce theory where "defendants, *acting in consort*, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566 (emphasis added).

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard*, 792 F.3d at 1378. "To make that showing, [the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

### III.  DISCUSSION

#### A. Personal Jurisdiction

Defendants BV and NV assert that they should be dismissed for lack of personal jurisdiction. ECF No. 21 at 8. Defendants argue that BV and NV are foreign holding companies that do not sell or manufacture the accused products. *Id.* at 1. Defendants point to NV's SEC filings, which states "[w]e are a holding company and our only material asset is our direct ownership of 100% of the share capital of NXP B.V., a Dutch private company with limited liability." *Id.* at 2; ECF No. 21-1 at 4. Defendants also note that ▮ website, www.nxp.com, describes BV as the "holding company of the operational companies within the NXP group." ECF No. 21 at 2; ECF No. 21-2. Defendants argue that NV, BV, and NXP USA are three separate, distinct, and independent entities. ECF No. 21 at 3. Defendants argue that the three entities maintain standard corporate formalities. *Id.* Defendants claim that NXP USA is the entity that operates in the United States. *Id.*

Applying the three-prong test for specific personal jurisdiction, the Court first considers whether MIMO has shown that Defendants BV and NV have "purposefully availed [themselves] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). To determine whether there are "minimum contacts," the Court must "inquire whether the defendant has 'purposefully directed his activities' at the forum state and, if so, whether the 'litigation results from alleged injuries that arise out of or relate to those activities.'" *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361–62 (Fed. Cir. 2006). "Purposeful availment" is the key element that MIMO must establish. *Hanson v. Denckla*, 457 U.S. 235, 253 (1958).

Defendants NV and BV need only have minimum contacts with the United States as a whole, rather than Texas alone, as they do not identify any other forum in the United States in which they would be subject to personal jurisdiction. ECF No. 21 at 12. *See* Fed. R. Civ. P. 4(k)(2); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018). MIMO alleges that Defendants NV and BV have minimum contacts with the United States because NV and BV act in consort with NXP USA to deliver products into the United States market under a stream-of-commerce theory.

To support its allegations that Defendant NV acts in consort with NXP USA in placing the accused products in the stream of commerce, MIMO claims that NV purposefully exploits the U.S. market. ECF No. 45 at 8. MIMO argues that there is no practical distinction between NXP USA and NV because they operate as a single entity, the "NXP Group." *Id.* MIMO argues that the website, www.nxp.com, holds the NXP Group out as a single company with an "NXP Leadership Team" composed of the executive officers of NV. *Id.* MIMO also notes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 9. Defendants' 30(b)(6) witness explained that ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*; ECF No. 45-1 at 43. MIMO points out that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF No. 45 at 10. MIMO argues that the executive officers of NV direct the conduct of NXP USA. *Id.* at 11. MIMO also notes that NXP's 2021 Form 10-K explains that NXP's manufacturing assets are managed together through one centralized organization. *Id.* at 11.

To support its allegations that Defendant BV acts in consort with NXP USA in placing the accused products in the stream of commerce, MIMO claims that BV employs key employees who have leadership roles in the NXP Group. *Id.* at 13. For example, MIMO claims that ▮▮▮▮▮▮ ▮▮▮▮▮▮ is responsible for NXP's group-wide business strategy ▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*

MIMO argues that it is reasonable to infer that ▇▇▇▇▇▇ is responsible for NXP USA's business strategy, including NXP USA's placement of the accused products into the stream of commerce in the United States. *Id.* MIMO argues that it is entitled to this inference because Defendants' 30(b)(6) witness was not prepared to answer questions regarding ▇▇▇▇▇▇ role. *Id.* MIMO also argues that the Court has specific jurisdiction over BV given ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 14. Further, MIMO argues that because Defendants' 30(b)(6) witness was unable to answer questions about the interactivity of ▇▇ website, MIMO is entitled to a reasonable inference that the website is highly interactive and allows customers to access information about, purchase, and request samples for the accused products. *Id.* at 15.

In response, Defendants argue NV, BV, and NXP USA are separate entities that do not commingle funds and are governed by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. ECF No. 51 at 2 (quoting ECF No. 51-1 at 57, 60, 163−164 (deposition testimony from Defendants' 30(b)(6) witness explaining Defendants' management of funds and ▇▇▇▇▇▇ ▇▇▇▇▇▇ )). Defendants cite Fifth Circuit case law, which states that "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present and doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant assertion of jurisdiction over the foreign parent." ECF No. 51 at 4 (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)). Defendants also note that directors and officers can represent two corporations separately despite common ownership. *Id.* at 5 (citing *United States v. Bestfoods*, 524 U.S. 51, 69−70 (1998)). Defendants argue that MIMO has failed to show that any of NV's or BV's officers or employees were acting on behalf of NV or

7

BV when making decisions related to NXP USA. *Id.* at 5, 7. Defendants also argue that MIMO has failed to show that ▇s website is interactive to support jurisdiction over BV. *Id.* at 8.

To begin, the Court declines MIMO's request to adversely infer that ▇▇▇▇ role with BV involves business strategy for NXP USA's placement of the accused products into the stream of commerce in the United States. The Court also declines MIMO's request to adversely infer that ▇ website, www.nxp.com, is interactive and allows customers to access information about, purchase, and request samples for the accused products. While Defendants' 30(b)(6) witness was not able to answer all of MIMO's questions regarding ▇▇▇▇ role or ▇ website, MIMO never brought this issue to the attention of the Court. Further, the order that compelled Defendants to provide a 30(b)(6) witness did not require Defendants to provide any information regarding ▇ website or individuals who are not involved in the importation, marketing, sales, or distribution of the accused products. ECF No. 42.

The Court agrees with Defendants and finds that MIMO failed to provide sufficient evidence to support Defendants NV's and BV's contact and purposeful availment towards the United States. MIMO's primary stream-of-commerce theory requires the Court to assume, without factual basis, that the individuals who have roles at both NV or BV and NXP USA, act, in their roles for NV or BV, to direct NXP USA's placement of the accused products into the stream of commerce in the United States. While the Court must take MIMO's facts as true at this stage in the proceedings, MIMO has provided no factual basis for its allegations that directors or officers of NV and BV act on behalf of NV and BV to control or direct NXP USA's placement of the accused products into the stream of commerce. The Supreme Court has explained that it is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite

8

their common ownership." *Bestfoods*, 524 U.S. at 69 (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997)). Further, "courts generally presume 'that directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary.'" *Id.* (quoting P. Blumberg, Law of Corporate Groups: Procedural Problems in the Law of Parent and Subsidiary Corporations §1.02.1, p. 12 (1983)). Thus, the Court is not inclined to assume that (1) any director or officer of NV or BV directed or controlled the placement of the accused products into the stream of commerce in the United States and (2) that officer or director also holds a role at NXP USA but acted on behalf of NV or BV, rather than the subsidiary NXP USA, when they directed or controlled the placement of the accused products in the stream of commerce in the United States.

With respect to ▮ website, www.nxp.com, the Court finds that MIMO failed to show that this website is "interactive" to support BV's minimum contacts with the forum. MIMO relies on *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-0134, 2017 WL 970383 (E.D. Tex. Mar. 1, 2017). In *Godo*, defendant Avago Ltd. operated a website www.avagotech.com. *Id.* at *5. This website directed customers as to where to buy the accused devices, contained a submission page for technical support, displayed marketing videos about Avago Ltd.'s products, and offered downloadable product selection guides and whitepapers. *Id.* at *6. The court concluded that the website was "highly interactive" to support specific personal jurisdiction in the forum state. *Id.* at *7. The court noted that Avago Ltd. operated its website in a way that made it impossible for customers to determine if Avago Ltd. was a separate entity from its domestic subsidiary. *Id.*

Here, MIMO has not shown that www.nxp.com is "highly interactive." In the record before the Court, there is no evidence that www.nxp.com directs customers as to where to buy the accused products, provides technical support, displays marketing materials, or offers guides or whitepapers. Further, BV has shown that the website does explain BV's relationship to NXP USA. The website

9

states: "BV acts as the holding company of the operational companies within the NXP group." ECF No. 21-2. Because MIMO has not shown that this is a highly interactive website, the Court concludes that the website alone does not support exercising specific personal jurisdiction over BV.

Ultimately, the Court believes this case is analogous to *Colida v. LG Electronics, Inc.*, 77 F. App'x 523 (Fed. Cir. 2003). In *Colida*, the owner of a design patent sued LG Electronics, Inc. *Id.* at 523. LG Electronics, Inc. is a Korean corporation with its principal place of business in Seoul, Korea. *Id.* at 523−24. The record showed that Korea-based LG Electronics, Inc. and U.S.-based LG Electronics USA had separate Boards of Directors and both maintained separate accounting systems. *Id.* at 524. Further, LG Electronics, Inc. did not direct or control LG Electronics USA's business, and LG Electronics, Inc. did not design, make, import, or sell the accused products. *Id.* Based on the record, the district court granted LG Electronics, Inc.'s motion to dismiss pursuant to Rule 12(B)(2). *Id.* at 523. The Federal Circuit affirmed the district court's ruling. *Id.* at 526.

Similarly, here NV, BV, and NXP USA are separate, distinct, and independent entities. ECF No. 21-3 ¶ 4. While NV has an ownership interest in BV, which in turn has an ownership interest in NXP USA, the record does not show that NV or BV directs or controls NXP USA's business. Further, like LG Electronics, Inc., the record shows that █████████████████████████████████████████████████████████████████████████████████████████████████████████████████

However, MIMO argues that this case is analogous to *ACQIS v. Lenovo Group Ltd.*, 572 F. Supp. 3d 291 (W.D. Tex. 2021). In *ACQIS*, the plaintiff sued Lenovo Group Ltd. for infringement of its patents. *Id.* at 296. Lenovo Group Ltd. is a Chinese company with its principal

place of business in Hong Kong. *Id.* Prior to this lawsuit, Lenovo Group Ltd. targeted the U.S. market by acquiring a division of a U.S. company. *Id.* at 305. Lenovo Group Ltd. also entered into a contract for the nationwide distribution of Lenovo products. *Id.* This Court found that there was sufficient evidence to support Lenovo Group Ltd.'s contacts and purposeful availment under a stream-of-commerce theory. *Id.* at 306. The Court noted that "receiving revenue from Texas and exercising control in establishing a distribution channel are likely sufficient to meet the demands of due process." *Id.*

But in this case, unlike *ACQIS*, MIMO has not shown that NV or BV have made an effort to target the U.S. market. While NV and BV have an ownership interest in NXP USA, which operates in the United States, MIMO has failed to show that NV and BV took any action to target this market. Further, unlike Lenovo Group Ltd.'s involvement in the distribution agreements for Lenovo products in the United States, MIMO has failed to show that NV or BV were involved in directing or controlling the distribution of NXP products in the United States.

In sum, the Court concludes that MIMO failed to provide sufficient evidence to support Defendants NV's and BV's contacts and purposeful availment towards the United States.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Under Federal Rules 12(B)(2) is **GRANTED**. Plaintiff's claims against Defendants NXP B.V. ("BV") and NXP Semiconductors N.V.'s ("NV") are dismissed without prejudice. The Court further **GRANTS** MIMO's request for leave to amend its Complaint. All deadlines in this Action regarding MIMO's claims against NXP USA will proceed as indicated in the scheduling orders at ECF Nos. 32, 47; the *Markman* hearing scheduled for April 10, 2023, will proceed without Defendants BV and NV.

Because the Court grants dismissal of Defendants BV and NV under Rule 12(B)(2), the Court does not consider Defendants' Motion to Dismiss Under Rule 12(B)(6).

**SIGNED** this 5th day of April, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE