**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

**REDSTONE LOGICS LLC,**

      **Plaintiff,**

**v.**

**NXP SEMICONDUCTORS N.V., NXP B.V.,**      **NO. 7:24-cv-00028-DC-DTG**
**AND NXP USA, INC.**

      **Defendants.**

## DEFENDANT NXP USA INC.'S RENEWED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

201851264.3

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................... 1

III.  LEGAL STANDARD ................................................................................ 5

     A.   Dismissal Under Rule 12(b)(6) ......................................................... 5

     B.   Properly Pleading Direct Infringement ............................................. 7

     C.   Properly Pleading Induced Infringement ........................................... 8

IV.   ARGUMENT ............................................................................................. 8

     A.   Redstone's Direct Infringement Allegations Impermissibly Mix-and-Match Products, Relying on Support From Non-Accused Products of a Third Party. 8

     B.   No Induced Infringement without Direct Infringement ................................. 11

     C.   Redstone's Generic Allegations of Inducing Activities Fail to Plausibly Support the Requisite Specific Intent Under 35 U.S.C. § 271(b) ................... 11

V.    CONCLUSION ......................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) .......................................................................12

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*,
No. 6:13-CV-365, 2014 U.S. Dist. LEXIS 90379 (W.D. Tex. May 12, 2014) ........................8

*Ak Meeting IP LLC v. Zoho Corp.*,
No. 1:22-CV-1165-LY-DH, 2023 U.S. Dist. LEXIS 19142 (W.D. Tex. Feb. 6,
2023) ..............................................................................................................7, 8

*Ak Meeting IP LLC v. Zoho Corp.*,
No. 1:22-CV-01165-LY, 2023 U.S. Dist. LEXIS 71307 (W.D. Tex. Mar. 1,
2023) ...................................................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................5, 6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................5

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*,
748 F.3d 631 (5th Cir. 2014) ................................................................................6

*Chhim v. Univ. of Tex. at Austin*,
836 F.3d 467 (5th Cir. 2016) ..............................................................................10

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
Case No. 6:14-cv-751, 2015 U.S. Dist. LEXIS 112095 (E.D. Tex. June 3,
2015) (Love, M.J.) .........................................................................................13, 14

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005)..............................................................................7

*CTD Networks LLC v. Microsoft Corp.*,
No. W-22-CV-01049-XR, 2023 U.S. Dist. LEXIS 147010 (W.D. Tex. Aug.
22, 2023) ..........................................................................................................7, 9

*DSU Med. Corp. v. JMS Co., Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006)...................................................................8, 11, 12

*Fernandez–Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) ................................................................................6

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016)................................................................................10

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)................................................................................................6

*Gentilello v. Rege*,
    627 F.3d 540 (5th Cir. 2010) ..............................................................................................6

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    No. 6:17-cv-00143, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ...................................6

*LifeNet Health v. LifeCell Corp.*,
    837 F.3d 1316 (Fed. Cir. 2016)...........................................................................................7

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014)...........................................................................................................11

*Marion Diagnostic Ctr., LLC v. McKesson Corp.*,
    386 F. Supp. 3d 477 (E.D. Pa. 2019) ................................................................................10

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012)...................................................................................13

*Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*,
    No. 6:20-cv-8876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) .............................11

*Parity Networks, LLC v. Cisco Sys., Inc.*,
    No. 6:19-cv-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019).............................6

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ..............................................................................................6

*United States ex rel. Steury v. Cardinal Health Inc.*,
    735 F.3d 202 (5th Cir. 2013) ............................................................................................10

*Stragent, LLC v. BMW of North America, LLC*,
    No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ......................13

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015)...........................................................................................13

*TeleSign Corp. v. Twilio, Inc.*,
    No. cv 16-2106-PSG, 2016 U.S. Dist. LEXIS 123516, 2016 WL 4703873
    (C.D. Cal. Aug. 3, 2016)......................................................................................................7

**Rules and Statutes**

35 U.S.C. § 271....................................................................................................1, 7, 8, 11, 12

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 2, 4 5, 6, 14

Defendant NXP USA, Inc. ("NXP") respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Redstone Logics LLC's ("Redstone") First Amended Complaint for Patent Infringement ("Amended Complaint," Dkt. 18), including Redstone's claims for direct and induced infringement under 35 U.S.C. §§ 271(a) and (b).

## I.        INTRODUCTION

Redstone's Amended Complaint should be dismissed because—as with its Original Complaint (Dkt. 1)—Redstone fails to adequately plead both direct and induced infringement. NXP previously moved to dismiss Redstone's original claims for direct, induced, contributory, and Section 271(f) infringement in its Original Complaint.  *See* Dkt. 16.  Redstone mooted this motion by filing the Amended Complaint, dropping allegations of contributory and Section 271(f) infringement.  Dkt. 18.  However, Redstone's renewed allegations of induced infringement are *identical* to those in its Original Complaint; these allegations fail to satisfy Rule 12 for the same reasons previously articulated (and re-addressed below).  *Compare* Dkt. 1 at ¶ 11, *with* Dkt. 18 at ¶ 11 (unchanged).  And, while Redstone made minor amendments to its prior allegations of direct infringement, Redstone's infringement allegations remain improperly premised upon the structure of a *different* product sold by a *different company*, not NXP.  Redstone's mixing-and-matching of features from multiple discrete products does not plausibly allege NXP's direct infringement and should be dismissed.

Since Redstone fails to plausibly state a claim for any relief, NXP respectfully requests that the Court dismiss the Amended Complaint with prejudice, as Redstone has now twice failed to satisfy its burden.

## II.       FACTUAL BACKGROUND

On January 26, 2024, Redstone filed the Original Complaint alleging infringement of Claim 1 from the '339 patent by NXP's i.MX 8 Family Application Processors ("Accused i.MX 8

Products").   Dkt. 1 (Complaint) at ¶¶ 10, 13; *see also generally* Dkt. 1-2 ("Claim Chart")

(purporting to align aspects of the Accused i.MX 8 Products with elements of '339 Patent

Claim 1).  The Accused i.MX 8 Products remain the only NXP products accused in the Amended

Complaint and Claim 1 remains the only asserted claim.  *See* Dkt. 18 at ¶¶ 10, 12; Dkt. 18-2

(generally).

> Claim 1 of the '339 patent states:
>
> 1. A multi-core processor, comprising:
>
> [1a] a first set of processor cores of the multi-core processor, wherein each processor core from the first set of processor cores is configured to dynamically receive a first supply voltage and a first output clock signal of a ***first phase lock loop (PLL)*** having a first clock signal as input;
>
> [1b] a second set of processor cores of the multi-core processor, wherein each processor core from the second set of processor cores is configured to dynamically receive a second supply voltage and a second output clock signal of a ***second PLL*** having a second clock signal as input, wherein the first supply voltage is independent from the second supply voltage, and the first clock signal is independent from the second clock signal; and
>
> [1c] an interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores.

Dkt. 18-1 ('339 Patent) at 7:53-8:5 (annotated to emphasize the PLL components).

NXP moved to dismiss Redstone's original claims under Federal Rule of Civil Procedure

12(b)(6), highlighting the factual deficiencies and conclusory allegations in Redstone's Original

Complaint.  *See generally* Dkt. 16.  In particular, NXP showed that Redstone failed to plausibly

allege that the accused products infringed the '339 Patent because Redstone's allegations were

impermissibly predicated on a disparate mix-and-match of NXP and non-NXP products, including

the ARM CoreTile Express A15×2 A7×3 daughterboard—an apparent ARM product that is not

201851264.3

2

supplied by NXP (the "ARM Daughterboard").[1]  *Id*. at 7-10.  NXP also demonstrated Redstone's

induced infringement allegations should be dismissed as insufficiently pled.  *Id*. at 13-14.

On June 17, 2024, Redstone filed its Amended Complaint (Dkt. 18), including Exhibit 2,

a claim chart purporting to align aspects of the Accused i.MX 8 Products with the elements of

Claim 1 from the '339 Patent.  *See generally* Dkt. 18-2 ("Claim Chart").  As detailed more fully

below, Redstone's Amended Complaint continues to improperly mix-and-match details of NXP's

Accused i.MX 8 Products and the distinct ARM Daughterboard to allege infringement.

Redstone's Claim Chart frequently includes the below image purporting to show the

architecture of the Accused i.MX 8 Products:



---

[1] NXP's prior motion also sought dismissal for Redstone's reliance on documentation for ARM cores that are not present in the Accused i.MX 8 Products.  While the Amended Complaint again erroneously relies on this support, NXP does not presently re-urge dismissal under this ground.

Dkt 18-2 at 2, 7, 14, 21 (annotated to emphasize processor cores).  As shown above, the Accused

i.MX 8 Products are depicted as a system on a chip containing numerous distinct components,

including processor cores whose design was supplied by third-party ARM—*i.e.*, the Cortex-A53,

Cortex-A72, and Cortex-M4F processor cores.  These ARM processor cores are *not* the ARM

Daughterboard, which is a *separate ARM product* that itself contains different processor cores.

Redstone's Amended Complaint must plausibly allege that NXP's Accused i.MX 8

Products *satisfy every limitation* of Claim 1 of the '339 Patent, yet Redstone's renewed allegations

for Claim 1's "phase lock loop" ("PLL") limitations continue to rely upon ARM's apparent

inclusion of PLLs within its ARM Daughterboard.  Dkt. 18-2 at 12, 19.  Specifically, Redstone's

only purported support for its allegations regarding the PLL of Claim 1 is an image that Redstone

excerpted from ARM's documentation for the ARM Daughterboard, a non-NXP product:



*Id.* (excerpted, PLLs annotated); *see also* Ex. 1 at 2-26.[2,3]  Redstone never alleges that the ARM

Daughterboard is contained within or used with NXP's Accused i.MX 8 Products, nor could it—

they are *distinct products provided by independent companies*.

---

[2] Because Redstone's Amended Complaint excerpts from and relies upon the *ARM® CoreTile Express A15×2 A7×3 Technical Reference Manual* (*see* Dkt. 18-2 at 12), this document may be properly cited in a motion at the Rule 12 stage without introducing matter external to the pleadings.

[3] Exhibits identified herein are exhibits to the Declaration of Eric C. Green, filed herewith.

In an apparent attempt to overcome its improper mixing-and-matching of products, Redstone's amended Claim Chart alleges that "[i]t is . . . substantially likely that the i.MX 8 Family Application Processor" uses the same PLL architecture as the ARM Daughterboard:

> For example, the NXP i.MX 8 Family Application Processor includes a first core complex comprising 4 ARM Cortex-A53 cores. The processor cores in the first set receive a dynamic supply voltage and a first output clock signal of a first PLL. ***ARM documentation for the big.LITTLE architecture used in the i.MX 8 Family Application Processor directly shows that each core cluster (e.g., the Core Complex 1 containing 4 ARM Coretex-A53 cores) receives its own clock domain. At the time the i.MX 8 Family Application Processor was designed, it was typical to produce this clock using a PLL that has a corresponding clock input. Furthermore, ARM documentation for an earlier, related device (the Cortex-A15_A7 MPCore test chip, which also has independent clock domains for different CPU clusters) shows each CPU cluster receiving an output clock signal from a PLL having a corresponding clock signal as input (e.g. from an oscillator). It is therefore substantially likely that the i.MX 8 Family Application Processor specifically receives a first output clock signal of a first PLL having a first clock signal as input.***

*Id.* at 6; *see also id.* at 13 (similar for the "second PLL") (amendments emphasized). Redstone's Amended Complaint does not contend that NXP sells the ARM Daughterboard, nor does it contend the ARM Daughterboard is incorporated within the Accused i.MX 8 Products. And, Redstone's Amended Complaint never identifies any plausible support for Redstone's apparent contention that processor cores in NXP's Accused i.MX 8 Products are incorporated within NXP's architecture in the same manner that ARM chose to implement different cores within its distinct chip architecture. *See id. generally.*

## III.   LEGAL STANDARD

### A.   Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the

201851264.3

5

reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

"When presented with a Rule 12(b)(6) motion, a court conducts a two-part analysis.  First, the court separates the factual and legal elements, accepting 'all of the complaint's well-pleaded facts as true, [while] . . . disregard[ing] any legal conclusions.'  Second, the court determines 'whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.''" *Parity Networks, LLC v. Cisco Sys., Inc.,* No. 6:19-cv-00207-ADA, 2019 WL 3940952, at *1 (W.D. Tex. July 26, 2019) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)) (alterations in original).  "The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  But, a court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005)); *see also Ashcroft*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").  "Conclusory allegations, or legal conclusions masquerading as factual conclusions, will not suffice to prevent a motion to dismiss." *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-cv-00143, 2017 WL 9477677, at *6 (W.D. Tex. Nov. 28, 2017) (citing *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)) (report and recommendation).

## B.        Properly Pleading Direct Infringement

Under 35 U.S.C. § 271(a), a defendant directly infringes a patent by making, using, selling, or offering to sell a patented invention within the United States.  Direct infringement "requires that each and every limitation set forth in a claim appear in an accused product."  *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016) (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005)).  "An element-by-element pleading of fact for each asserted patent claim is not required, but: To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims."  *Ak Meeting IP LLC v. Zoho Corp.*, No. 1:22-CV-1165-LY-DH, 2023 U.S. Dist. LEXIS 19142, at *8-9 (W.D. Tex. Feb. 6, 2023) (cleaned up), report and recommendation adopted, No. 1:22-CV-01165-LY, 2023 U.S. Dist. LEXIS 71307, at *4 (W.D. Tex. Mar. 1, 2023).  "A plaintiff does not satisfy this requirement by mixing and matching between different accused products in its claim charts, as infringement cannot be shown by a muddled hash of elements from different products."  *CTD Networks LLC v. Microsoft Corp.*, No. W-22-CV-01049-XR, 2023 U.S. Dist. LEXIS 147010, at *12 (W.D. Tex. Aug. 22, 2023) (cleaned up); *see also TeleSign Corp. v. Twilio, Inc.*, No. cv 16-2106-PSG, 2016 U.S. Dist. LEXIS 123516, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) (finding plaintiff failed to state a claim for infringement when it neither plausibly alleged any one product performed all elements nor that multiple products were used conjunctively to infringe).  Where a complaint fails to plausibly demonstrate that a single product meets all elements of an asserted claim, but instead mixes and matches support from multiple distinct products, dismissal is appropriate.  *See CTD Networks*, 2023 U.S. Dist. LEXIS 147010, at *12 (dismissing a complaint that "mix[ed] and match[ed] software products to satisfy limitations of the variously infringed patent claims"); *see also Ak Meeting IP*, 2023 U.S. Dist. LEXIS 19142, at *11 (dismissing a complaint that "mixes and matches

201851264.3

disparate features of three different [defendant] products and asserts these features collectively infringe").

### C.      Properly Pleading Induced Infringement

Under 35 U.S.C. §§ 271(b), a defendant may be found to be an indirect infringer if it induces the infringement of a third party.  To properly plead induced infringement under 35 U.S.C. § 271(b), a complaint "must allege facts showing that [a defendant]: (1) had actual knowledge of the patent; (2) knowingly induced a third-party to infringe the patent; and (3) had specific intent to induce the patent infringement." *Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*, No. 6:13-CV-365, 2014 U.S. Dist. LEXIS 90379, at *6 (W.D. Tex. May 12, 2014) (citing *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)).

## IV.     ARGUMENT

### A.      Redstone's Direct Infringement Allegations Impermissibly Mix-and-Match Products, Relying on Support From Non-Accused Products of a Third Party

Redstone's Complaint fails to plead a plausible claim of direct infringement because its purported infringement support for Claim 1 of the '339 Patent—shown in Exhibit 2 to the Amended Complaint—relies in substantial part on products other than what is accused.  *See* Dkt. 18-2 at 6, 12, 13, 19 (relying on a "test chip" in the ARM Daughterboard).  To properly plead ***NXP's direct infringement***, Redstone must plausibly allege that each accused ***NXP product*** satisfies all elements of an asserted claim.  *See Ak Meeting IP*, 2023 U.S. Dist. LEXIS 19142, at *8-9 ("To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets ***each limitation*** of the asserted claim or claims." (emphasis added)).  Redstone has not done so, warranting dismissal of its direct infringement allegations.

As detailed above, the Amended Complaint's direct infringement allegations rely on a combination of features from NXP's Accused i.MX 8 Products and features within the separate

ARM Daughterboard—a completely unrelated product of a different company. The Amended Complaint cites to NXP documentation purporting to indicate that the Accused i.MX 8 Products are systems on a chip with numerous components, including multiple processor cores. *See, e.g.,* Dkt. 18-2 at 2, 3; *see also* Section II*, supra.* However, the cited NXP documentation never depicts the PLLs required by Claim 1—a fact that Redstone does not appear to dispute. *Id.* at 6-19. To fill in this gap, Redstone turns to documentation for the ARM Daughterboard and its purported use of first and second PLLs. *Id.* at 12, 19. Specifically, the Amended Complaint relies upon the following image that Redstone excerpted from **ARM** documentation for a non-NXP product:



*Id.* (excerpted, annotated); *see also* Ex. 1 at 2-26. Redstone's fundamental problem is that its relied-upon excerpt is from the "*ARM® CoreTile Express A15×2 A7×3 Technical Reference Manual,*" and the image **relates to a distinct ARM Product** called the "CoreTile Express A15×2 A7×3 daughterboard" (defined above as the "ARM Daughterboard"). *Id.* The ARM Daughterboard is not one of the Accused i.MX 8 Products, and Redstone provides no reason why it can plausibly rely upon documentation for a product that is wholly separate from the Accused i.MX 8 Products.

Redstone's direct infringement allegations are nothing more than an impermissible "mixing and matching" of different products; but, an infringement claim cannot be shown "by a muddled hash of elements from different products." *CTD Networks LLC*, 2023 U.S. Dist. LEXIS

147010, at *12.  The Amended Complaint never plausibly alleges that NXP is connected to the

ARM Daughterboard or its particular arrangement of PLLs—indeed, Redstone never contends the

ARM Daughterboard is designed, made, sold, or used by NXP in any way (nor could it).  Despite

this complete disconnect, the Amended Complaint confusingly refers to the ARM Daughterboard

as "an earlier, related device."  Dkt. 18-2 at 6, 12.  Redstone then engages in unfounded speculation

that it "is therefore substantially likely that the i.MX 8 Family Application Processor" has the same

structure as the ARM Daughterboard.  Dkt. 18-2 at 6, 13.  But these are different products designed

by teams at different companies.[4]

Even though courts are to "take the well-pleaded factual allegations in the complaint as

true," they "do not credit conclusory allegations or allegations that merely restate the legal

elements of a claim."  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016); *see also*

*Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a

defendant has acted unlawfully.").  Redstone bases its infringement allegations on mere

speculation that NXP's architecture designed in the same manner as non-NXP products, but more

is required as Redstone's "factual allegations must support a claim to relief that is plausible on its

face and ***rises above mere speculation***."  *See United States ex rel. Steury v. Cardinal Health Inc.*,

735 F.3d 202, 204 (5th Cir. 2013) (emphasis added); *see also Marion Diagnostic Ctr., LLC v.*

*McKesson Corp.*, 386 F. Supp. 3d 477, 482 (E.D. Pa. 2019) (quoting *Finkelman v. Nat'l Football*

*League*, 810 F.3d 187, 201 (3d Cir. 2016)) ("[T]here is a difference between allegations that stand

on well-pleaded facts and allegations that stand on nothing more than supposition.").  Redstone's

---

[4] Indeed, the two chips do not even contain the same processor cores.  While the Accused i.MX
Products are alleged to contain ARM Cortex-A53, Cortex-A72, and Cortex-M4F processing cores
(Dkt. 18-2 at 2), the ARM Daughterboard is described as containing ARM Cortex-A7 and Cortex-
A15 processing cores (Ex. 1 at 2-4 and 2-5).

201851264.3

speculation as to the inclusion of PLLs within the Accused i.MX Product does not plausibly support a claim for infringement.

Redstone has now had two attempts to plausibly allege direct infringement by NXP's Accused i.MX 8 Products, and has failed both times, choosing to twice rely on others' products and unsupported speculation.  Accordingly, the Court should dismiss the direct infringement claims with prejudice.

### B.      No Induced Infringement without Direct Infringement

As a baseline matter, because Redstone has not plausibly pled any act of direct infringement—a prerequisite to a finding of induced infringement—Redstone's induced infringement allegations must be dismissed.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[I]nducement liability may arise if, but only if, there is direct infringement." (cleaned up)).

### C.      Redstone's Generic Allegations of Inducing Activities Fail to Plausibly Support the Requisite Specific Intent Under 35 U.S.C. § 271(b)

Redstone's induced infringement allegations should also be dismissed because the Complaint fails to plead facts plausibly showing that NXP has a specific intent to induce infringement of the Asserted Patent.  *See Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*, No. 6:20-cv-8876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (explaining that "there must be facts alleging a specific intent to induce the direct infringer" to adequately plead a claim of induced infringement).  Specific intent to induce infringement is "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).  Redstone has now failed to meet this standard twice, warranting dismissal.

Redstone's Complaint alleges only *generally* that certain NXP marketing activities induce infringement by NXP's end customers; Redstone never identifies any *specific* marketing material or activity.   And, Redstone never identifies any facts that plausibly suggest NXP's product marketing was done with the requisite specific intent to induce others to infringe.   *See Id.* at 1305 (noting a complaint "must allege facts showing that [a defendant] . . . had specific intent to induce the patent infringement").

Here, Redstone's generic indirect infringement claim in its Amended Complaint—which is identical to the Original Complaint—fails to plead any facts plausibly alleging NXP's specific intent to induce others to infringe:

> Defendants also knowingly and intentionally induce infringement of one or more claims of the '339 Patent in violation of 35 U.S.C. § 271(b). Through at least the filing and service of this Complaint, Defendants have had knowledge of the '339 Patent and the infringing nature of the Accused Instrumentalities. Despite this knowledge of the '339 Patent, Defendants continue to ***actively encourage and instruct their customers and end users (for example, through user manuals and online instruction materials on their website) to use the Accused Instrumentalities in ways that directly infringe the '339 Patent***. Furthermore, Defendants offer the Accused Instrumentalities in a form and configuration such that customers and end users will ***perform the claimed method automatically by using the Accused Instrumentalities "out of the box" in their ordinary way***. Defendants do so knowing [sic] and intending that their customers and end users will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '339 Patent, ***thereby specifically intending for and inducing their customers to infringe the '339 Patent*** through the customers' normal and customary use of the Accused Instrumentalities.

Dkt. 18 at ¶ 11 (emphases added).

An inducement claim that "simply recites the legal conclusion that Defendants acted with specific intent" or generically alleges that a defendant acted to "urge, instruct, [and] encourage" infringement is insufficient. *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (affirming dismissal of indirect infringement claims).   Redstone's allegations—particularly as to specific intent—are mere boilerplate, and they contain no factual

201851264.3

12

allegations from which the Court could determine that NXP plausibly performs the alleged inducing acts, much less that NXP possesses the requisite specific intent to induce others to directly infringe.

The Amended Complaint merely repeats Redstone's generic allegations that NXP provides "user manuals and online instruction materials," or that its products "perform the claimed method . . . 'out of the box.'" *Id.* However, it is well established that simply providing a service and instructing customers how to use a product does not alone show an affirmative intent to induce infringement. *See Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 & n.3 (Fed. Cir. 2015) (instructions that describe an allegedly "infringing mode" do not show intent to induce; instead, inducement requires taking "active steps" to encourage direct infringement); *Stragent, LLC v. BMW of North America, LLC*, No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at *9-10 (E.D. Tex. Mar. 3, 2017) (dismissing indirect infringement claim where complaint pleads only "that the Defendants provide customers with infringing devices along with instructions"); *see also MONEC Holding AG v. Motorola Mobility, Inc.,* 897 F. Supp. 2d 225, 234 (D. Del. 2012) (dismissing inducement claim because conclusory allegations regarding Defendants' "selling, advertising, supplying and instructing its respective customers on the use of the infringing product" do not "demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement").

Redstone's generic inducement allegations fare no better than the assertions of specific intent held to be insufficient in *Core Wireless Licensing S.A.R.L. v. Apple Inc.* The *Core Wireless* complaint alleged that the defendant induced infringement by "provid[ing] instructive materials and information concerning operation and use of the accused products." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, Case No. 6:14-cv-751, 2015 U.S. Dist. LEXIS 112095, at *10 (E.D. Tex.

June 3, 2015) (Love, M.J.).  The court there held that "generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim." *Id.* at *11.  Likewise, Redstone fails to plead facts demonstrating specific intent to induce infringement.

As Redstone has provided only legal boilerplate and generic information and has failed to plead any facts upon which the Court could plausibly find that NXP specifically intended to include others' infringement, the Court should dismiss Redstone's claims for induced infringement.

## V.     CONCLUSION

For the foregoing reasons, NXP respectfully requests that the Court grant its motion and dismiss Plaintiff's claims for direct and induced infringement of the Asserted Patent under Rule 12(b)(6).

201851264.3

July 1, 2024

Respectfully submitted,

By: */s/ Eric C. Green*

Richard S. Zembek
Texas State Bar No. 00797726
richard.zembek@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151
Fax: (713) 651-5246

Eric C. Green
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Texas State Bar No. 24069824
eric.green@nortonrosefulbright.com
Tel: (512) 536-3094
Fax: (512) 536-4598

COUNSEL FOR DEFENDANT NXP USA, INC

## CERTIFICATE OF SERVICE

I certify that on July 1, 2024, I electronically filed the foregoing with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Eric C. Green*
Eric C. Green

201851264.3